**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(EASTERN DIVISION)**

| | |
|---|---|
| **In re:**<br><br>**THE SKI MARKET LTD., INC.,**<br><br>    **Debtor.** | **Chapter 11**<br>**Case No. 09-22502-HJB** |

## STIPULATION REGARDING PREPETITION GIFT CARD PROGRAM

NOW COMES The Ski Market Ltd., Inc., the debtor herein (the "Debtor"), Richard Blumenthal, Attorney General of the State of Connecticut (the "Connecticut AG"), Martha Coakley, Attorney General of the Commonwealth of Massachusetts (the "Massachusetts AG"), and Patrick C. Lynch, Attorney General of the State of Rhode Island (the "Rhode Island AG"; collectively with the Connecticut AG and the Massachusetts AG, the "AGs"; collectively with the Debtor, the "Parties"), and enter into the following Stipulation (the "Stipulation") regarding the Debtor's prepetition gift card program.

## FACTUAL BACKGROUND

1. On December 29, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2. Since the Petition Date, the Debtor has continued in the management of its business as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. The official committee of unsecured creditors (the "Committee") was formed on January 8, 2010.

3. Currently, the Debtor operates seven retail locations which feature a wide selection of skis, snowboards, bicycles, and skateboards as well as related accessories and

apparel. The Debtor also offers a variety of services such as equipment rental and repairs. The Debtor believes that the "Ski Market" brand has significant value.

4. Prior to the Petition Date, the Debtor sold gift cards and/or gift certificates (the "Gift Cards") to consumers in the ordinary course of its business (the "Gift Card Program"). Customers could then redeem their Gift Cards at the Debtor's stores in exchange for goods and products. On its Amended Schedule E, the Debtor indicated that it had liability to holders of unredeemed Gift Cards (the "Gift Card Claimants") in the amount of $293,111.32 for gift certificates issued and outstanding under the Gift Card Program between August 28, 2006 and December 21, 2009. The Debtor stopped selling Gift Cards more than a week prior to the Petition Date, but continued to honor unredeemed Gift Cards until the Petition Date. As of the Petition Date, the Debtor ceased its Gift Card Program entirely.

5. On the Petition Date, the Debtor filed its Motion for (I) Approval of Bidding Procedures and Sale Procedures and (II) Entry of an Order Authorizing (A) Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Assumption and Assignment of Certain Unexpired Leases (the "Sale Motion"). In the Sale Motion, the Debtor seeks authority to sell substantially all assets used and useful in the operation of the Debtor's business (the "Assets") to a high bidder within a shortened timeframe.

6. On January 8, 2010 this Court entered an order approving certain sale and bidding procedures related to the sale of the Assets, including the following timeline:

| | |
|---|---|
| Deadline for Bids and Deposit | January 27, 2010 at 4:00 p.m. |
| Initial Sale Hearing and Auction | February 1, 2010 at 10:00 a.m. |
| Deadline for Objections | February 3, 2010 at 4:00 p.m. |
| Final Sale Hearing | February 5, 2010 at 10:00 a.m. |

Sale Closing Date    on or before February 12, 2010

7. The Connecticut AG filed a Limited Objection to the Debtor's Sale Motion (the "Connecticut AG Objection"). In the Connecticut AG Objection, the Connecticut AG contends that, among other things, in accordance with Connecticut Law, the Debtor should be required to honor all outstanding Gift Cards on the same basis and terms that they were sold to consumers prior to the Petition Date.

8. On January 6, 2010, at a hearing on the bidding procedures portion of the Sale Motion, the Connecticut AG agreed to hold his objection until the Final Sale Hearing.

9. Since the hearing on January 6, 2010, the Massachusetts AG and the Rhode Island AG have contacted the Debtor (through counsel) and indicated their intent to file separate objections to the Sale Motion.

10. The Debtor and the AGs have engaged in substantive negotiations to resolve certain issues related to the Gift Card Program and the Connecticut AG Objection. In order to maintain customer goodwill pending the sale of the Assets and to quell certain objections of the AGs, the Parties have agreed to a modified version of the Gift Card Program (the "Redemption Program"), as outlined below.

## STIPULATION

NOW THEREFORE, for good and valuable consideration, the Parties stipulate and agree as follows:

A. Gift Card Claimants may redeem their Gift Cards up to an amount equal to fifty percent (50%) of the value of such Gift Cards, as reflected in the Debtor's records as being the unredeemed value of each Gift Card. Gift Cards may only be used once to purchase inventory of the Debtor. No cash will be returned to the Gift Card Claimants for any unused

portion of their Gift Cards. Gift Cards must be turned in to the Debtor at the time of redemption. Upon redemption of a Gift Card, the Debtor will provide the Gift Card Claimant with a receipt (for the Gift Card Claimant's records) showing the unused balance on the Gift Card. The Debtor will not honor lost Gift Cards.

B. Pending the duration of the Redemption Program the Debtor will not mark up the retail prices of its inventory as a result of the Redemption Program.

C. The Redemption Program will commence at the opening time(s) of the Debtor's stores' regular operating hours on the later of (a) Saturday, January 16, 2010 or (b) one day after the Bankruptcy Court approves this Stipulation and the terms of the Redemption Program. The Redemption Program will end on the earlier of (a) Sunday, January 24, 2010 at the closing time(s) of the Debtor's stores' regular operating hours or (b) termination of the Debtor's authority to use cash collateral, as set forth in any cash collateral stipulation and interim order entered by this Court (the "Interim Cash Collateral Order").

D. Notwithstanding anything to the contrary that may be contained in any Interim Cash Collateral Order, as adequate protection for the Debtor's use and the diminution of South Shore Savings Bank's ("SSSB") prepetition and postpetition collateral in connection with the redemption of Gift Cards, SSSB shall be granted a first priority lien against all prepetition and postpetition assets of the Debtor and the Debtor's estate to the extent of redemptions of Gift Cards pursuant to the Redemption Program, but only in the amount of such redemptions ("Redemptions"), not for the gross amount of the Gift Cards tendered for redemption. Such lien shall extend to so-called avoidance actions and avoidance action recoveries ("Recoveries"); provided, however, that SSSB shall be entitled to receive from the Recoveries only the lesser of

(1) the amount of the Redemptions or (2) 50% of the amount of the Recoveries, in each instance less the amount of the Redemptions received by SSSB from any other source.

        E.      The Debtor will not oppose any "charge backs" that the Gift Card Claimants make to their credit card companies, if their Gift Cards were purchased by credit card, provided that the amount of the "charge back" is not more than the amount that is reflected in the Debtor's records as being the unredeemed balance of the Gift Card Claimant's Gift Card.

        F.      The Debtor will not object to priority claim status for any Gift Card Claimants who participate in the Redemption Program and who timely file proofs of claim for the unredeemed amounts of their Gift Cards, provided that (1) the amounts claimed do not exceed either (a) the amounts reflected in the Debtor's records as being the unredeemed balance of such Gift Card Claimants' Gift Cards, or (b) the priority cap set forth in Bankruptcy Code § 507(a)(7) (i.e., $2,425.00), and (2) the amounts claimed have not been paid or otherwise satisfied from some other source (for example, from credit card "charge backs").  Nothing herein shall limit the rights of any other party in interest to object to the status or allowance of any claims.  The Debtor shall maintain its normal record keeping related to Gift Cards through the completion of the normal bankruptcy claim resolution procedures in this bankruptcy case.

        G.      The Debtor will be free to publicize the Redemption Program in its discretion, but will not be given the right to edit the AGs' public press releases regarding the Redemption Program.  The Debtor will place signage in its stores (e.g., at its registers) announcing the Redemption Program.

        H.      Subject to paragraphs E and F above, nothing contained herein is intended or should be construed as an admission as to any wrongdoing by or obligation of the Debtor or any other party in interest, including but not limited to SSSB, or as to the validity of any claim

against the Debtor, a waiver of the Debtor's right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code § 365. Likewise, if the Bankruptcy Court grants the relief sought herein, any payment made pursuant to the Court's order approving this Stipulation is not intended and should not be construed to be an admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

I. Upon the Court's approval of this Stipulation, the Connecticut AG will have been deemed to have withdrawn the Connecticut AG Objection, and the AGs will not otherwise object to the Sale Motion because of any matter related to the Gift Cards. The AGs reserve their rights to object to matters not related to the Gift Cards.

J. This Stipulation is subject to approval by SSSB and by the guarantors of the Debtor's obligations to SSSB. This Stipulation is also subject to Bankruptcy Court approval pursuant to MLBR 9019-1. Absent such approval, this Stipulation shall be of no force or effect.

Respectfully submitted,

THE SKI MARKET LTD, INC.

By its counsel,

/s/ Joseph H. Baldiga
Joseph H. Baldiga, BBO #549963
Christine E. Devine, BBO #566990
Gina M. Barbieri, BBO # 670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1700 West Park Drive
Westborough, MA 01581-3941
Phone: (508) 898-1501
Fax:   (508) 898-1502
Email: bankrupt@mirickoconnell.com

Date: January 15, 2010

[see following pages]

**AGREED AS TO FORM
AND SUBSTANCE**

By:     /s/ Jim Lee
    Jim Lee
    Chief, Civil Division
    Rhode Island Attorney General's Office
    150 S. Main St.
    Providence, RI 02903
    Phone: (401) 274-4400, ext. 2314
    Email: JLee@riag.ri.gov


By:     /s/ Scott D. Schafer
    Scott D. Schafer
    Chief, Consumer Protection Division
    Office of Attorney General Martha Coakley
    Commonwealth of Massachusetts
    1 Ashburton Place
    Boston, MA 02108
    Phone: (617) 963-2516
    Fax: (617) 727-5765
    Email: Scott.Schafer@state.ma.us


By:     /s/ Brendan T. Flynn
    Brendan T. Flynn
    Assistant Attorney General
    Office of the Attorney General
    Consumer Protection Department
    110 Sherman Street
    Hartford, CT 06105
    Phone: 860.808.5400
    Fax: 860.808.5593
    Email: Brendan.Flynn@po.state.ct.us


Dated: January 15, 2010

ROBERT L. FERGUSON

By his counsel,


       /s/ Gerald Doherty
Michael A. Bass, Esq.
Gerald Doherty, Esq.
Bass, Doherty & Finks P.C.
40 Soldiers Field Place
Boston, MA 02135-1104
Phone: 617.787.5551
Fax:    617.787.4963
Email: mbass@bassdoherty.com

Dated:  January 14, 2010


ROBERT L. FERGUSON FAMILY TRUST

By its counsel,


       /s/ Gerald Doherty
Michael A. Bass, Esq.
Gerald Doherty, Esq.
Bass, Doherty & Finks P.C.
40 Soldiers Field Place
Boston, MA 02135-1104
Phone: 617.787.5551
Fax:    617.787.4963
Email: mbass@bassdoherty.com

Dated:  January 14, 2010