## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## (EASTERN DIVISION)

In re:

THE SKI MARKET LTD., INC.,

      Debtor.

Chapter 11

Case No. 09-22502-HJB

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 9014 (A) APPROVING (I) THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (II) ALL OTHER TRANSACTIONS CONTEMPLATED IN THE AGENCY AGREEMENT WITH GORDON BROTHERS RETAIL PARTNERS, LLC; (B) AUTHORIZING THE AGENT TO CONDUCT GOING-OUT-OF-BUSINESS SALES; AND (C) GRANTING OTHER RELATED RELIEF

Upon consideration of the (i) motion, dated December 29, 2009, and the supplement thereto, dated January 27, 2010 (collectively, the "Sale Motion"), filed by the above-captioned debtor and debtor-in-possession (the "Debtor"), requesting, *inter alia*, the issuance and entry of an order (I) authorizing and approving (A) the sale of substantially all of the Debtor's assets (the "Assets") free and clear of all liens, claims and encumbrances, and (B) the conduct of store closing or similar themed sales; (II) granting such other related relief as may be appropriate; and (ii) *Order Approving Form of Notice of Sale and Limited Notice* (the "Sale Procedures Order"); and upon the auction (the "Auction") having been held before this Court on February 1, 2010, at which time Gordon Brothers Retail Partners, LLC (the "Agent") submitted the highest or otherwise best bid for the Debtor's Merchandise, as determined by the Debtor, with the consent of the Official Committee of Unsecured Creditors (the "Committee") and South Shore Savings Bank (the "Lender"); and a joint venture consisting of SB Capital Group, LLC and Tiger Capital Group, LLC submitting the second highest or otherwise best bid for the

Debtor's Merchandise; and this Court having subject matter jurisdiction to consider the Sale

Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the

Sale Motion and the relief requested therein being a "core" proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Sale Motion having been provided, and it appearing that no other

notice need be given; and it appearing that the relief requested in the Sale Motion is in the best

interest of the Debtor, its estate and creditors; and any objections filed to the Sale Motion having

been resolved, withdrawn, or otherwise overruled by the Court as provided in this Order; and

after due deliberation, and sufficient cause appearing therefor,[1]

### IT IS HEREBY FURTHER FOUND AND DETERMINED, AS FOLLOWS:

A.      The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law,

they are adopted as such.  To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

C.      An initial hearing on the Sale Motion was conducted on January 6, 2010 (the

"Procedures Hearing").  At the conclusion of the Procedures Hearing, the Court entered its Sale

Procedures Order, which among other things, approved notice of the Sale, scheduled the (i)

Auction for February 1, 2010 and (ii) final hearing on the Sale Motion for February 5, 2010 (the

"Final Hearing").

---

[1]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Agency
Agreement (hereinafter defined) or the Sale Motion, as applicable.

D.    At the Auction conducted in Court on February 1, 2010 , the Debtor determined that the bid submitted by the Agent was the highest and best bid received.

E.    On February 2, 2010, the Debtor and the Agent entered into the Agency Agreement (the "Agency Agreement") attached hereto as **Exhibit 1**. To secure the obligations under the Agency Agreement, the Debtor agreed in the manner set forth in section 17.12 of the Agency Agreement to grant to the Agent a valid and perfected security interest in the Merchandise, the Agent's disposition commission related to Owned FF&E as provided for in Section 15 of the Agency Agreement, the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 of the Agency Agreement, and the Proceeds to secure all obligations of the Debtor to the Agent under the Agency Agreement, junior only to (a) an amount equal to the unpaid portion of the Guaranteed Amount and (b) any amount owed by the Agent to the Debtor for Expenses, without the necessity of filing financing statements to perfect the security interests.

F.    The Court conducted the Final Hearing on February 5, 2010. Upon the evidence and arguments adduced at the Final Hearing, the record of the Auction and the Procedures Hearing, and for the reasons set forth in the Sale Motion, the Court has determined that the relief requested in the Sale Motion is in the best interests of the Debtor and its estate, and that any and all objections with respect thereto, unless resolved by the terms of this Order, should be overruled.

G.    Notice of the Sale Motion, the Procedures Hearing, the Auction and of the Final Hearing was given in accordance with the directive of the Court and as otherwise required by applicable law, as evidenced by the affidavits and certificates of service on file with the Clerk of the Court.

H.      The notice provided of the Sale Motion, the Procedures Hearing, the Auction and the Final Hearing was adequate and sufficient under the circumstances, and any otherwise applicable requirement for notice is hereby waived and dispensed with.

I.      The Agent is acting in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Sections 363(m) and (n) of the Bankruptcy Code with respect to all of the Merchandise and in connection with all of the transactions contemplated by the Agency Agreement. The Agency Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. Neither the Debtor nor the Agent have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of or implicate Section 363(n) of the Bankruptcy Code to the Agency Agreement or to the consummation of the transactions contemplated thereby. The Agent is entitled to all the protections and immunities of Section 363(m) of the Bankruptcy Code.

J.      The offer of the Agent upon the terms and conditions set forth in the Agency Agreement, including the form and total consideration to be realized by the Debtor pursuant to the Agency Agreement, (i) is the highest and best offer received by the Debtor; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtor's creditors and estate.

K.      The closing of the Stores is in the best interest of the Debtor's estate and creditors.

L.      Conduct of the Sales at the Stores will provide an efficient means for the Debtor to dispose of the Merchandise and certain other assets located at the Stores in accordance with the terms of the Agency Agreement.

M.      The Debtor has represented to this Court that it is neither selling nor leasing personally identifiable information (or assets containing personally identifiable information) nor

will the Agent be in possession of personally identifiable information, although the Agent will be authorized to use that information subject to Section 10 (b) (v) of the Agency Agreement.

N.    The Agency Agreement was negotiated in good faith and at arms' length between the Debtor and Agent.

O.    In consideration of Hilco's conducting its due diligence and entering into the Stalking Horse Agreement, which served as a base by which other offers were measured, Hilco is entitled to receive, from the gross proceeds actually received from the transaction consummated with Agent, an amount sufficient to reimburse Hilco for actual documented, third-party out of pocket expenses (e.g., independent contractor supervisors, signage, professional fees, travel expenses, etc.) in an aggregate amount not to exceed $10,000 (the "Expense Reimbursement").

## IT IS HEREBY ORDERED AS FOLLOWS:

1.    The Sale Motion is granted to the extent provided herein.

2.    All objections to the Sale Motion that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits and denied.

3.    The Agent shall pay the Estimated Guaranteed Amount and the Adjustment Amount, if any, in accordance with the Agency Agreement.

## AUTHORIZATION FOR SALES FREE AND CLEAR OF LIENS

4.    The Debtor is hereby authorized, pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code, to sell (i) the Merchandise and (ii) to the extent elected by the Debtor under the terms of the Agency Agreement, the Owned FF&E and the Merchant Consignment Goods, including to conduct the Sale at the Stores identified in the Agency Agreement.  No bulk sale,

"going-out-of-business," or similar law shall prohibit the Debtor or the Agent from taking any action contemplated by the Agency Agreement.

5.      Except as otherwise provided for in the Agency Agreement, pursuant to Section 363(f) of the Bankruptcy Code, the Debtor is authorized to sell the Merchandise, the Owned FF&E and the Merchant Consignment Goods, free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in Section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of the Lender and any other parties asserting a security interest in such Assets, whether arising by agreement, statute or otherwise and whether arising before, on or after the date on which this chapter 11 case was commenced (collectively, the "Liens"), with such Liens, if any, to attach to the net Proceeds of such sales (net of Sale Taxes), with the same validity, force and effect as the same had with respect to such Assets at issue, subject to (a) any and all defenses, claims and/or counterclaims or setoffs that may exist, and (b) paragraphs 6 through 11 of this Order.  Nothing in this Order, the Agency Agreement or otherwise shall affect in any way any prepetition or postpetition Liens of the Lender or any other secured creditor of the Debtor in any Assets other than the Merchandise, Owned FF&E or Merchant Consignment Goods.

6.      Upon the payment of the Initial Guaranteed Payment and delivery of the Guaranty L/C and Expense L/C, Agent shall be entitled to sell all (i) Merchandise, (ii) Owned FF&E and (iii) Merchant Consignment Goods, if the Debtor elects it to do so, hereunder free and clear of all liens, claims, or encumbrances thereon.

7.      Upon the payment of the Initial Guaranteed Payment and delivery of the Guaranty

L/C and Expense L/C, any presently existing Liens encumbering all or any portion of the

Merchandise or the Proceeds shall attach only to the Guaranteed Amount, any and all proceeds

of the Guaranty L/C, any and all proceeds of the Expense L/C, all cash payable by the Merchant

under Section 7.3 of the Agency Agreement and all amounts reimbursed by the Agent to the

Debtor on account of Expenses.  Any prepetition or postpetition Liens of the Lender or any other

secured creditor of the Debtor shall attach to the Guaranteed Amount, any and all proceeds of the

Guaranty L/C, any and all proceeds of the Expense L/C, all cash payable by the Merchant under

Section 7.3 of the Agency Agreement and all amounts reimbursed by Agent to Debtor on

account of Expenses in the same order and priority as has been established by prior cash

collateral orders of this Court or as may otherwise be ordered by this Court in connection with

any final cash collateral or other final order.

### AGENT'S SECURITY INTEREST

8.      Upon the payment of the Initial Guaranteed Payment and delivery of the Guaranty

L/C and Expense L/C, all amounts owed by the Debtor to the Agent under the terms of the

Agency Agreement shall be and hereby are granted the status of superpriority claims in the

Debtor's bankruptcy case pursuant to Section 364(c) of the Bankruptcy Code, and shall have

priority over all other costs and expenses of administration of the kinds specified in, but not

limited to, Sections 105, 326, 503(b), 507(a) or 507(b) of the Bankruptcy Code.

9.      Upon the payment of the Initial Guaranteed Payment and delivery of the Guaranty

LC and Expense L/C, the obligations owed by the Debtor to Agent under the Agency Agreement

shall be and hereby are secured under Sections 363(b) and 364(d) of the Bankruptcy Code by a

valid and perfected first priority security interest in and lien upon the Merchandise, Agent's

disposition commission related to Owned FF&E as provided for in Section 15 of the Agency

Agreement, Agent's commission regarding the sale or other disposition of Merchant

Consignment Goods under Section 5.4 of the Agency Agreement, and the Proceeds to secure all

obligations of the Debtor to Agent under the Agency Agreement, junior only to (a) an amount

equal to the unpaid portion of the Guaranteed Amount and (b) any amount owed by the Agent to

the Debtor for Expenses without the necessity of filing financing statements to perfect the

security interests. For the purposes of perfecting such security interests in the Proceeds, the

financial institutions acting on behalf of the Debtor in receiving the Proceeds shall be deemed to

be acting on behalf of Agent in an agency capacity. For the avoidance of doubt, the security

interests granted the Agent hereunder in Merchandise, Agent's disposition commission related to

Owned FF&E as provided for in Section 15 of the Agency Agreement, Agent's commission

regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 of the

Agency Agreement, and the Proceeds shall, subject only to the terms of Section 15 of the

Agency Agreement, at all times be senior to the liens and/or security interests of the Lender in

such items, including any liens and/or security interests granted to the Lender by this Court.

10.    The security interest granted hereby shall be deemed to and hereby is properly

perfected upon entry of this Order without the need for further filings or further documentation.

Without in any way diminishing the foregoing, the Debtor shall execute all such documents and

take all such other actions as are reasonably required to perfect and maintain such security

interest as a valid and perfected first priority security interest. The liens, claims and security

interests and other protections granted to the Agent hereunder shall continue (including in any

successor case) and shall maintain their priority as provided in this Order until all of Debtor's

obligations to Agent shall have been indefeasibly paid in full.

11.    The granting of the security interests under this Order shall constitute a transfer of estate Assets and shall be afforded all of the protections of Sections 363(n) and 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions contemplated by the Agency Agreement pursuant to this Order and the Procedures Order shall not affect the validity of such transactions, unless such authorization and consummation are properly stayed pending appeal; provided that no such stay shall affect the validity of any transaction consummated before the Agent has received notice of the entry of such stay.

## AUTHORIZATION TO CONDUCT THE STORE CLOSING SALES

12.    The Debtor is hereby authorized and empowered to enter into the Agency Agreement, and the Agency Agreement is hereby approved in its entirety and is incorporated herein by reference.

13.    The Debtor is authorized and empowered, pursuant to Section 363(b)(1) of the Bankruptcy Code, to conduct a store closing sale at the Stores and to close any of such Stores upon completion of said store closing sale at each location.

14.    The store closing sale shall be concluded, without further Order of this Court, no later than March 31, 2010.

15.    Subject to applicable state and local public health and safety laws ("Safety Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"), but with respect to Liquidation Sale Laws and Banner and Signwalker Advertising (each as defined below), not subject to Safety Laws or General Laws, the Debtor and the Agent be, and they hereby are, authorized to take such actions necessary and appropriate to implement the Agency Agreement and to conduct the Sale in accordance with the terms of the

Agency Agreement without the necessity of a further order of this Court, including, but not

limited to, advertising the Sale through the posting of signs (including the use of exterior banners

at (i) non-enclosed mall Stores, and (ii) enclosed mall Stores to the extent the applicable Store

entrance does not require entry into the enclosed mall common area), use of sign walkers and

street signage, in accordance with the Agency Agreement and as otherwise provided in the sale

guidelines (the "Sale Guidelines"), which Sale Guidelines are hereby approved in the form

attached hereto as **Exhibit 2**.

16.     Except as expressly provided for in the Agency Agreement, nothing in this Order

or the Agency Agreement and none of the Agent's actions taken in respect of the Sale shall be

deemed to constitute an assumption by Agent of any of Debtor's obligations relating to any of

the Debtor's employees, nor shall Agent become liable under any collective bargaining or

employment agreement or be deemed a joint or successor employer with respect to such

employees.

17.     All of the transactions contemplated by the Agency Agreement shall be protected

by Section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on

appeal.

18.     The provisions of this Order shall be self-executing notwithstanding any

restrictions in the Agency Agreement on the Agent's ability to conduct the Sale in compliance

with applicable laws or closing Store leases.  Unless otherwise ordered by the Court, all

newspapers and other advertising media in which the Sale may be advertised, and all landlords

are directed to accept this Order as binding authority so as to authorize the Debtor and the Agent

to consummate the Agency Agreement and to conduct the Sale at the Stores, including, without

limitation, conducting and advertising of the Sale (at the contractual rates charged to the Debtor

prior to the filing of the Debtor's bankruptcy case) in accordance with the Agency Agreement,
the Sale Guidelines and this Order; and no further approval, license or permits of any
governmental authority shall be required.

19. Except as to the States (as to which no injunction shall apply whatsoever), and
except as expressly provided for herein or in the Sale Guidelines: no person or entity, including
but not limited to any landlord or federal or Local Governmental Unit (as defined below):
(i) served with a copy of the Sale Motion; or (ii) served with a copy of this Order who does not
object pursuant to the provisions of this Order, shall take any action to directly or indirectly
prevent, interfere with, or otherwise hinder consummation of the Sale, or the advertising and
promotion (including the posting of signs and use of sign walkers) of such Sale, and all such
parties and persons of every nature and description, including landlords, utility companies and
credit card processing companies, and all those acting for or on behalf of such parties, are
prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct
of the Sale and/or (b) instituting any action or proceeding in any court or administrative body
seeking an order or judgment against, among others, the Debtor, the Agent, or the Debtor's
landlords for the Stores that might in any way directly or indirectly obstruct or otherwise
interfere with or adversely affect the conduct of the Sale and/or seek to recover damages for
breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized
herein. This Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or
persons shall take no action against the Debtor, the Agent, the landlords or the Sale until this
Court has resolved such dispute. This Court shall hear the request of such persons or parties with
respect to any such disputes on an expedited basis, as may be appropriate under the
circumstances. No Governmental Unit (as defined in Section 101(27) of the Bankruptcy Code)

shall be bound by this injunctive provision unless it was either previously served with the Sale

Motion and failed to timely file an objection, or subsequently served with this Order, and has had

an opportunity to object as provided in this Order.

20.     The Sale at the Stores shall be conducted by the Debtor and the Agent without the

necessity of compliance with any federal, state or local statute or ordinance, including any

ordinance, lease provision or licensing requirement affecting store closing, "going out of

business," liquidation or auction sales, or affecting advertising, including signs, banners, posting

of signage, and use of sign walkers, other than Safety Laws and General Laws, except as may

otherwise expressly be provided for in the Sale Guidelines.  NOTWITHSTANDING THE

FOREGOING SENTENCE, OR ANY OTHER PROVISION OF THIS ORDER, OR OF THE

AGENCY AGREEMENT, OR OF THE SALE GUIDELINES TO THE CONTRARY, with

respect solely to Agent's use, in conformity with the Sale Guidelines, of (i) signwalkers;

(ii) interior store signage and banners; and (iii) exterior banners ("Banner and Signwalker

Advertising"), (A) Agent is unconditionally authorized to use Banner and Signwalker

Advertising notwithstanding any Liquidation Sales Laws, Safety Laws, General Laws, or lease

provision which purports to regulate, prohibit, restrict, or in any way limit such activity so long

as such activity is undertaken by Agent in a safe and professional manner as determined by the

applicable law enforcement agency; (B) any person (including without limitation any landlord or

Governmental Unit (but not the States)) who, after having received a copy of this Order, and

after having been specifically advised in writing of the provisions of this Section, continues to

interfere with any Banner and Signwalker Advertisement, including any action by a

Governmental Unit taken against a landlord based on the activities of Agent undertaken pursuant

to this Order (other than by seeking redress to this Court as provided in this Section or as

permitted by further ruling of the Court as a result thereof) shall be liable to Agent and/or Debtor

and affected landlord(s) for any and all damages resulting from such continued interference; and

(C) this Court shall retain exclusive jurisdiction with respect to any claim or issue by any person

(including without limitation any State, Governmental Unit, or landlord) that seeks to regulate,

prohibit, restrict, or in any other way limit Banner and Signwalker Advertising, or that alleges

that Banner and Signwalker Advertising is not being undertaken in a safe and professional

manner, with any such claim or issue to be heard by this Court on an expedited basis.

21.    Except as expressly provided for in the Agency Agreement, the Sale at the Stores

shall be conducted by the Debtor and the Agent notwithstanding any restrictive provision of any

lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the

conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions,

provided, however, that nothing in this Order shall impact any objection that any of the Debtor's

landlords may have to assumption, assignment or rejection of their respective lease or to any

proposed cure amount or rejection damages claim in association with such assumption,

assignment or rejection.

22.    Except as may otherwise be specifically set forth in the Sale Guidelines, or any

side agreement between the Agent and the subject landlord, the Debtor and/or the Agent, as the

case may be, are authorized and empowered to transfer assets among the Stores.

23.    Except as expressly provided in this Order, nothing in this Order shall be deemed

to bar any Governmental Unit from enforcing Safety Laws and General Laws in the applicable

non-bankruptcy forum, subject to the Debtor's or the Agent's right to assert that any such laws

are not in fact Safety Laws or General Laws or that such enforcement is impermissible under the

Bankruptcy Code, this Order or otherwise; provided, that the Governmental Unit shall (i) in the

first instance present the matter to this Court for resolution, or request that it be permitted to

proceed with the matter in the applicable non-bankruptcy forum and (ii) provide the Debtor and

the Agent and any affected landlord with reasonable notice and opportunity to cure any such

alleged violation absent extenuating circumstances and/or to oppose the relief sought by such

Governmental Unit. Cessation of alleged unlawful conduct after notice shall not, in and of itself,

render moot court action by any Governmental Unit, under any circumstances, seeking injunctive

relief that may lie even if the Debtor or the Agent has ceased the alleged unlawful conduct. The

Debtor and/or the Agent and affected landlord do not waive the right to argue that the conduct

was in compliance with this Order and/or any applicable law, or preempted by applicable law. In

the event that the Debtor and the Agent are unable to have such Governmental Unit withdraw

any citations that may be issued by a Governmental Unit against a landlord, then such landlord

shall have the right to file a claim for its reasonable costs and expenses, including attorneys fees,

incurred in connection with such citation.

24.    Within five (5) business days of entry of this Order, the Debtor shall serve copies

of this Order, via first class mail, upon: (i) the State Attorney General's offices and State

Consumer Protection Agency for each State where a Store is located; and (ii) the Local

(hereinafter defined) mayor or similar representative of each village, or city official, and the

county or parish where a Store is located, addressed to the attention of the municipal, city or

county attorney, in each case to the consumer protection division. Except as provided for in

paragraph 23, this Court shall retain exclusive jurisdiction to resolve any dispute arising under

Liquidations Sales Laws and related to the Sale Guidelines, the Agency Agreement, or this

Order, by any Local Governmental Unit filed within 20 days of service of this Order. Except as

provided in paragraph 15 of this Order with respect to Banner and Signwalker Advertising,

nothing herein shall preclude any Governmental Unit from enforcing Safety Laws or General Laws in an appropriate non bankruptcy forum.

25.    The Agent is authorized to conduct, advertise, post signs, and otherwise promote the Sale as a "going out of business," "store closing", "sale on everything", "everything must go", or similar themed sale, without further consent of any person, in accordance with the terms and conditions of the Agency Agreement and the Sale Guidelines and without further compliance with applicable federal, state or local laws governing, *inter alia*, the conduct of store closing sales (the "Liquidation Sale Laws"), other than those designed to protect public health and safety.  The terms "Liquidation Sale Law" and "Liquidation Sale Laws" shall be deemed not to include any Safety Laws or General Laws.

26.    The Debtor is authorized to conduct the Sale in accordance with the terms of this Order, the Sale Guidelines, and the Agency Agreement.  Provided that the Sale is so conducted (and subject to the provisions of this Order) the Debtor, the Agent, and the Debtor's landlords, shall be presumed to be in compliance with any State, county, parish, or municipal or other local government's (hereinafter referred to as "Local") requirements governing the conduct of the Sale, *including* the Liquidation Sale Laws of (i) any Local Governmental Unit (which means all Governmental Units other than the States or federal Governmental Units) served with a copy of the Sale Motion; and (ii) any Local Governmental Unit served with this Order and who does not object pursuant to the provisions of paragraph 14 of this Order.  Except as provided in paragraph 14 with respect to Banner and Signwalker Advertising, nothing herein shall (i) exempt the Debtor and/or the Agent from compliance with any Safety Laws or General Laws, or (ii) preclude any Governmental Unit from enforcing Safety Laws or General Laws in an appropriate non bankruptcy forum.

27.     If there is a dispute (a "Reserved Dispute") over the enforceability of a Liquidation Sale Law, resolution of such Reserved Dispute will take place before this Court, as provided herein and shall only operate prospectively.

28.     Any time before the twentieth (20th) day following the service of this Order as provided for above, any Local Governmental Unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to the Debtor's and the Agent's counsel. If the Debtor and the objecting Local Governmental Unit (as the case may be, the "Objecting Party") are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Parties notice, either party may file a motion with this Court requesting a resolution of the dispute ("Dispute Resolution Motion"). If a Dispute Resolution Motion is timely filed, the Debtor and the Agent shall each be entitled to assert that the provisions in question are preempted by the Bankruptcy Code and/or that neither the terms of this Order nor the conduct of the Sale violates the Liquidation Sales Law. The timely filing of a Dispute Resolution Motion will not affect the finality of this Order or limit or interfere with the ability to conduct the Sale. By timely filing a Dispute Resolution Motion, all Governmental Units shall be entitled to assert any jurisdictional, procedural or substantive argument that they might heretofore have been entitled to raise. Any such Dispute Resolution Motion will also be served upon any affected landlord.

29.     The Agent shall be granted a limited license and right to use until the Sale Termination Date the trade names, and logos relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement, and as specifically limited by and subject to Section 10 (b) (v) of the Agency Agreement.

30.    Except as otherwise provided in paragraph 19 of this Order, each and every federal, state, or local agency, department, or governmental authority with regulatory authority over the Sale and all newspapers and other advertising media in which the Sale is advertised shall be directed to accept this Order as binding and to allow Debtor and the Agent to consummate the transactions provided for in the Agency Agreement, including (without limitation) the conducting and advertising of the Sale in the manner contemplated by the Agency Agreement, and no further approval, license, or permit of any governmental authority shall be required.

31.    All utilities, landlords, creditors, and all persons acting for or on their behalf shall not interfere with or otherwise impede the conduct of the Sale, nor institute any action in any court (other than in the Bankruptcy Court) or before any administrative body that in any way directly or indirectly interferes with or obstructs or impedes the conduct of the Sale.

32.    Nothing herein shall be deemed to constitute a ruling on whether any non-bankruptcy state law, regulation or rule applicable to the Sale is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to whether sovereign immunity applies.

33.    The Agent's security interest provided for in the Agency Agreement and sales of Merchandise shall be protected in the event that this Order is reversed or modified on appeal pursuant to Sections 364(e) and 363(m) of the Bankruptcy Code.

34.    The Agent shall not be liable for any claims against the Debtor other than as expressly provided for in the Agency Agreement and the Agent shall have no successor liabilities whatsoever.

35.    The Agent's performance and continued performance under the Agency Agreement was and will be, and payment of the Guaranteed Amount under the Agency Agreement was and will be so made, in good faith and for valid business purposes and uses, as a consequence of which the Agent is entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

36.    The Debtor, the Agent and each of their respective officers, employees and agents be, and they hereby are, authorized to take any and all actions which may be necessary or desirable to implement the Agency Agreement and each of the transactions contemplated thereby.

37.    The Agent shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment, and other assets of Debtor as designated hereunder for the purpose of conducting the Sale, free of any interference from any entity or person. The Agent shall not supplement the Merchandise in the Sale, but shall be permitted to move Merchandise between the Stores.

38.    The provisions of this Order and the Agency Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtor, or which may be entered converting the Debtor's cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Agency Agreement as well as the rights and interests granted pursuant to this Order and the Agency Agreement shall continue in this or any superseding case and shall be binding upon the Debtor, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in these

cases shall be and hereby is authorized, but not obligated, to continue to operate the business of

the Debtor to the fullest extent necessary to permit compliance with the terms of this Order and

the Agency Agreement and the Agent and the trustee shall be and hereby are authorized, but not

obligated, to perform under the Agency Agreement upon the appointment of a trustee without the

need for further order of this Court for a period of ten (10) days, subject to further Court

approval. In the event a chapter 7 trustee appointed in this case moves for an order of this Court

in connection with the continued operation of the business, such motion shall be heard on an

expedited basis.

39.    Before any sale, abandonment or other disposition of computers (including

software) and/or cash registers and any other point of sale FF&E (collectively, "POS

Equipment"), which may contain Personally Identifiable Information, the Debtor shall remove or

cause to be removed the Personally Identifiable Information from the POS Equipment.

### BONUS PAYMENTS

40.    The Debtor is authorized, but not directed, to pay its full time, non-insider,

employees Bonus Payments, in its sole discretion; provided, that no Bonus Payment shall exceed

10% of base payroll for any eligible employee.

### OTHER PROVISIONS

41.    The Debtor shall pay to Hilco, from the gross proceeds actually received from the

transaction consummated with the Agent, an amount sufficient to reimburse Hilco for its actual

documented out of pocket expenses, including third-party out of pocket expenses (e.g.,

independent contractor supervisors, signage, professional fees, travel expenses, etc.) in an

aggregate amount not to exceed $10,000.

42.    This Order constitutes an authorization of conduct by the Debtor and nothing

contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of

any state, and the failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

43.     In the event any or all of the provisions of this Order are modified, amended or vacated by a subsequent order of the Court or any other court, the Agent shall be entitled to the protections provided in Section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the liens or priority authorized or created under the Agency Agreement or this Order.

44.     To the extent, if any, anything contained in this Order conflicts with a provision in the Agency Agreement or the Sale Guidelines, this Order shall govern and control.

45.     To the extent that the disposition of the assets under the Agency Agreement would constitute the sale of an interest in a consumer credit transaction that is subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), then the purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

46.     The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

47.     Notwithstanding Bankruptcy Rule 6004, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Immediately upon entry of this Order, the Debtor and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement, and the Agent shall be

afforded the protections of Section 363(m) of the Bankruptcy Code as to all aspects of the

transactions under and pursuant to the Agency Agreement if this Order or any authorization

contained herein is reversed or modified on appeal.

48.     The Agent is a party in interest and shall have the ability to appear and be heard

on all issues related to or otherwise connected to the Agency Agreement and the conduct of the

Sale.

49.     Except as provided for in paragraph 23, the Court shall retain exclusive

jurisdiction over the parties to enforce this Order and the relief provided for herein, the Agency

Agreement, the Sale Guidelines, any side letter entered into by and between the Agent and any

landlord, all amendments or modifications to any of the foregoing, any waivers and consents

thereunder, and of each of the agreements executed in connection therewith in all respects, and to

determine disputes thereunder, and protect the Agent against any Liens or interference with the

Sale, or to resolve any disputes relating to the Sale or the Agency Agreement or the

implementation thereof.

Dated: February 5, 2010
       Springfield, Massachusetts

HENRY J. BOROFF
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

## AGENCY AGREEMENT

**Exhibit 2**

**SALE GUIDELINES**

1

--------------------------------------------------------------X

In re:

SKI MARKET LTD, INC.,

                           Debtor-in-Possession.

Case No.:  09-22502

Chapter 11

--------------------------------------------------------------X

## GUIDELINES FOR CONDUCT OF GOING OUT OF BUSINESS SALES

1.      Subject to the terms and conditions of the Agency Agreement by and between Merchant and Agent, dated as of February 2, 2010 (the "**Agency Agreement**") and the Sale Order, the following procedures shall apply to any sales (each a "**Sale**" and collectively, "**Sales**") to be held at Merchant's Stores. [2]

2.      The Sales shall be conducted so that the Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Stores.

3.      The Sales shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless Merchant had been operating such Store on a Sunday.

4.      Within a "shopping center", Agent shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located. Otherwise, Agent may solicit customers in the Stores themselves. Agent shall not use any flashing lights or

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agency Agreement.

1608989 v5/NY

amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

5.      At the conclusion of the Sales, Agent shall vacate the Stores in broom clean condition, and shall leave the Stores in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, in accordance with Section 15 of the Agency Agreement, provided, however, that Merchant and Agent hereby do not undertake any greater obligation than as set forth in an applicable lease with respect to a Store. Merchant may abandon any Owned FF&E not sold in the Sale at the Stores at the conclusion of the Sales. Any abandoned Owned FF&E left in a Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against Merchant.

6.      All display and hanging signs used by Agent in connection with the Sales shall be professionally produced and all hanging signs shall be hung in a professional manner. Merchant and Agent may advertise the Sale as a "going out of business," "store closing" "sale on everything", or similar themed sale. Merchant and Agent shall not use neon or day-glo signs. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale *Guidelines* - *(JH)*

7.      Nothing contained herein shall be construed to create or impose upon Agent any additional restrictions not contained in the applicable lease agreement. In addition, Merchant and Agent shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store, shall not be wider

2

than the storefront of the Store, and shall not be larger than 4 feet x 40 feet. In addition,

Merchant and Agent shall be permitted to utilize sign walkers, A-frame, interior and exterior

banners, and similar signage; provided, however, that the use of such sign walkers, A-frame,

interior and exterior banners and similar signage shall be done in a safe and professional manner

and otherwise in accordance with these Sale Guidelines.

8.      Conspicuous signs shall be posted in the cash register areas of each of the affected

Stores to effect that "all sales are final." Conspicuous signage shall be posted in the cash register

area of each Store to the effect that the manufacturers' warranty, if any, may still exist and

customers should consult the packaging materials to see what, if any, manufacturer's warranties

are available.

9.      Except with respect to the hanging of exterior banners, Agent shall not make any

alterations to the storefront or exterior walls of any Stores.

10.      Agent shall not make any alterations to interior or exterior Store lighting. No

property of the landlord of a Store shall be removed or sold during the Sales. The hanging of

exterior banners or other signage shall not constitute an alteration to a Store.

11.      Agent shall keep Store premises and surrounding areas clear and orderly

consistent with present practices.

12.      Subject to the provisions of the Agency Agreement, Agent shall have the right to

sell Owned FF&E located in the Stores during the Sale; provided, however, that the Owned

FF&E is not the property of the applicable landlord (of which Merchant shall advise Agent

promptly after the Sale Commencement Date). Agent may advertise the sale of the Owned

FF&E consistent with these guidelines. Additionally, the purchasers of any Owned FF&E sold

3

during the Sale shall only be permitted to remove the Owned FF&E either through the back shipping areas or through other areas after store business hours.

13.   At the conclusion of the Sale at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Stores' premises as set forth in the applicable leases.  Merchant, Agent and their agents and representatives shall continue to have exclusive and unfettered access to the Stores.

14.   Postpetition rents shall be paid by Merchant as required by the Bankruptcy Code until the rejection or assumption and assignment of each lease.

15.   The rights of landlords for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease.

16.   If and to the extent that the landlord of any Store affected hereby contends that Merchant is in breach of or default under these Sale Guidelines, such landlord shall provide at least five (5) days' written notice, served by facsimile and overnight delivery, on Merchant and its counsel, and the Agent and Agent's counsel, at the following facsimile numbers and addresses:

| **If to the Merchant:** | **If to the Agent:** |
|---|---|
| MIRICK, O'CONNELL, DEMALLIE & LOUGEE, LLP<br>Attn: Joseph H. Baldiga, Esq.<br>1700 West Park Drive<br>Westborough, MA  01581<br>Tel. (508) 860-1464<br>Fax. (508) 983-6264<br>Email: jbaldiga@mirickoconnell.com | GORDON BROTHERS RETAIL PARTNERS, LLC<br>Attn: Mitchell H. Cohen<br>101 Huntington Avenue, 10th Floor<br>Boston, MA  02199<br>Tel. (617) 422-6207<br>Fax. (617) 422-6266<br>Email: mcohen@gordonbrothers.com |

4